Argued and submitted February 12, reversed and remanded for reconsideration
September 10, 1986

ROSSI,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(85-AB-582; CA A35951)

724 P2d 935

Jeremy V. Sarant, Portland, argued the cause and filed the brief for petitioner.

No appearance for respondent Employment Division.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent Military Department. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Petitioner seeks review of an order which denied her unemployment benefits on the grounds that she voluntarily left work without good cause and that a reasonable alternative was available. We reverse and remand for reconsideration.

The referee made the following findings and conclusions, which were adopted by the Employment Appeals Board:

"FINDINGS OF FACT: (1) The claimant began work for the employer October 16, 1978, and by letter dated July 25, 1984, terminated her employment effective October 16, 1984. (2) The claimant worked as a security person. (3) The claimant quit her job because she felt that she could no longer take the pressure of bad management and harassment. (4) Claimant had numerous concerns, most of which were directed towards CMSgt. Raycraft and MSgt. Pattison.

"(a)    Several years prior to March 11, 1984, Capt. Gano authorized the claimant to wear fitted male pants. Thereafter she was told by Sgt. Hammons to wear female pants. On March 11, 1984, Capt. Gano executed a memo for record documenting a counseling session wherein he acknowledged that he had given her permission.

"(b)    In July 1984, the claimant suffered a hearing injury. CMSgt. Raycraft took her off active duty due to the injury.

"(c)    In August or September 1983, rotating shifts were ordered. The claimant objected because of her financial considerations. She felt CMSgt. Raycraft and MSgt. Pattison were insensitive to her.

"(d)    The claimant did not like it that MSgt. Marshall was told by MSgt. Pattison sometime around March 20, 1984, to document negative comments about her. It is MSgt. Marshall's duty to document on all employees.

"(e)    For quite some time, there has been an ongoing personality conflict between the claimant and CMSgt. Raycraft and MSgt. Pattison.

"(f)    On May 2, 1984, the claimant received a letter of counseling from CMSgt. Raycraft based on a number of complaints.

"(g)    On March 1, 1984, the claimant received notification from an informant that a possible theft had occurred. The claimant declined to tell MSgt. Pattison who the informant was, and he got very irritated and wrote a letter March 2, 1984, to CMSgt. Raycraft.

"(5)    On November 8, 1983, CMSgt. Raycraft asked SSgt. DeVault to install a radio in his personal vehicle. (6) On November 9, 1983, the claimant reported the incident to Lt. Col. Bulletset. (7) Based on the incident, CMSgt. Raycraft received a letter of reprimand for failing to supervise the documenting of pass status.

"(8)    MSgt. Pattison had a heart attack on March 20, 1984. (9) For four subsequent months, he was on a medical leave, and not on active duty.

"(10)    In 1981, the claimant filed a complaint somewhat similar to her 1984 complaint.

"(11)    On September 16, 1984, three female members of the Oregon Air National Guard filed complaints. (12) The claimant was one of the complainants. (13) Col. Dobler, Commander of the 142 Group, immediately requested an investigation. (14) A formal investigation was conducted by Major Paulson and TSgt. Wright. (15) Their detailed and very extensive investigation report was entered on November 16, 1984.

"(16)    Mid level management and higher management does, and will continue, to institute discipline if it feels that it is appropriate, and has frequently taken discipline in the past.

"CONCLUSIONS AND REASONS:    The claimant voluntarily left work without good cause.

OAR 471-30-038(4) states that 'good cause' for voluntarily leaving work is '[S]uch that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work.'

"Contrary to what the administrative decision found, there is insufficient evidence to show sexual harassment towards the claimant. Rather, there was an occasional conflict and disagreement between the claimant and certain members of lower management. It is important to note that this situation spans many years, and shows no particular pattern. Under these circumstances, good cause has not been proven.

"Regarding whether a reasonable alternative existed, the key fact in this case is the referee's last finding of fact. This finding is probably an understatement. The referee perceives there is an extreme sensitivity. The claimant filed her complaint September 16, 1984. She terminated her employment effective October 16, 1984. The investigation report was entered on November 16, 1984. The reasonable alternative

existed for the claimant to remain employed and wait and see what corrections the investigation report triggered."

On appeal, petitioner raises two assignments of error: (1) EAB ignored evidence on whether she had good cause to leave or, in the alternative, the referee failed to make required credibility determinations; (2) there is not a sufficient explanation to connect the factual findings with the conclusions that she did not have good cause to leave and that she had a reasonable alternative to leaving.

We will not uphold an agency's decision if there are not sufficient findings of fact to support the conclusions, or if the conclusions are not logically related to the facts found. ORS 183.470(2); 183.482(8)(a); *Teledyne Wah Chang v. Energy Fac. Siting Council,* 298 Or 240, 255, 692 P2d 86 (1984). Here, it is readily apparent, and the state concedes, that the order is deficient in many respects.[1] Nevertheless, the state urges us to sustain the agency's decision, contending that the

[1] The state noted in its brief:

"The order in this case did not sufficiently address claimant's contentions as to the existence of 'bad management' and harassment. It found that claimant 'felt that she could no longer take the pressure of bad management and harassment' and that she had 'numerous concerns' but reached no specific conclusion as to whether they were justified. It then detailed seven occurrences, in some instances not very accurately, which were the basis for those concerns. There is no specific finding that those occurrences did or did not constitute harassment, and an implied finding that they did not, but were merely 'an occasional conflict and disagreement between the claimant and certain members of lower management.' The order specifically found that sexual harassment did not occur, implying that sexual harassment was an issue although it was not. The order did not explain why any particular incident did not (or did) reach the level of harassment. Six of seven incidents related to a nine or ten month period from August or September 1983 to July 1984, and the order does not explain or state the significance of its conclusion that 'this situation spans many years, and shows no particular pattern.'

"The order could have, but did not, distinguish between 'bad management' and harassment, and conclude (with an explanation) that the former would not ordinarily or in this case justify leaving work. It did not explain the significance (or lack thereof) of findings 5, 6 and 7 (installation by someone else on duty, of radio in supervisor's personal vehicle), and why failure properly to discipline someone else on claimant's report did not constitute harassment of her. It could have concluded from the almost three month's notice which she gave that she did not find working conditions to be so bad that she had no alternative rather than to leave work, but rather timed her departure for her own convenience. The order did not consider the reason (*not* harassment) stated in claimant's letter giving notice, and did not consider other motives for leaving work (primarily, joining her husband in Texas) which could logically be inferred from the record. Claimant's credibility was not particularly an issue in the case, but the order would have been improved if the question of credibility had been addressed."

order can be upheld, because petitioner had a reasonable alternative to leaving work. Given the defects in the order, we are unable to accept the state's proposal which, in effect, asks us to ignore those defects. Because the factual findings are insufficient to support EAB's conclusions, and because there is no logical connection between the facts found and the conclusion that petitioner voluntarily left work without good cause, the case must be returned to EAB.

Reversed and remanded for reconsideration.